## CIRCUIT COURT OF THE CITY OF RICHMOND

Haynie I. Hudson, Jr.

v.

Brooks Transfer
and Storage et al.

June 4, 1992

Case No. LT-2883–3

By Judge T. J. Markow

This matter is before the court on the special pleas in bar of the Workers' Compensation Act as the plaintiff's exclusive remedy. The plaintiff, Haynie I. Hudson, Jr., was injured when the truck he was driving for Ryder Truck and Rental Leasing overturned on a trip to a reclamation center with switching equipment which was being replaced with updated models at C&P's Central Office. Hudson alleges that improper loading of the equipment by employees of the defendants caused the accident.

C&P and the other defendants, all of which have contractual relations with C&P, either directly or through subcontracts, assert that they are "statutory employers" of Hudson as defined in § 65.2–302 of the Virginia Code Annotated (Repl. Vol. 1991). If the defendants are statutory employers of Hudson, Code § 65.2–307 limits compensation to the provisions of the Act, and Hudson would be barred from bringing a common law action against them.

Hudson argues that the defendants are not his statutory employers. It is his position that the work he was engaged in was not part of the trade, business, or occupation of C&P or the other defendants and, therefore, they were "other parties" against which he may bring a common law action as allowed by Code § 65.2–309.

Without tracing the contractual relations of the various entities, since the crux of the matter is whether the hauling away of the replaced equipment was the trade, business or occupation of C&P, the

court finds that the removal of the equipment was a part of C&P's business. The State Corporation Commission, pursuant to its authorization to regulate public service companies, has set rules and service standards which require the meeting of certain service objectives. Meeting these objectives requires updating of equipment as technology and the population grows. For example, the "Operating Service Criteria for Virginia Telephone Utilities" document specifically directs that "Central office equipment shall be engineered so that customers shall receive dial tone during the busy hour within three (3) seconds after lifting their receivers on ninety-eight and one-half percent (98.5%) of their calls." Failure to meet that test indicates that "the need for a complete analysis of the central office equipment exists."

The plaintiff concedes that the installation of new equipment is a part of the trade, business, or occupation of C&P (as, indeed, he must because of the holding in *Henderson v. Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987)) but proposes that disposing of the old equipment is not. He argues that there was no requirement that it be taken to the reclamation center and suggests that it could have merely been stored in C&P's basement. He finds great significance in the designation of the equipment as "junk," attempting to make a distinction between equipment and "junk" and to draw a line between them which would separate business from nonbusiness activity. However, new equipment cannot be installed without way being made for it by the removal of the old. In this day and age of superfund cleanups and other efforts to hold industry responsible for the proper and safe disposal of wastes, this court can see no justification for finding that the running of a business is not implicated in the disposal of business waste. Here, however, the case is even stronger. Upon removal of the old equipment, C&P was required by its parent company, Bell Atlantic, to take the equipment to Bell Atlantic's reclamation center in Ashland. It was during that transport that the plaintiff was injured.

At the reclamation center, Bell Atlantic first attempted to find other users who would buy the equipment. If no buyer was found, the equipment was reduced to scrap and sold. In either case, C&P received compensation. This was not equipment that C&P could just throw out with the trash. As a part of its business, C&P attempted to minimize the costs of the project by a specific means of disposal of the equipment.

C&P also established that it had the personnel and the transportation equipment to do this entire job but that it was more economical and efficient to have subcontracted the work to others. One contractor, AT&T Technologies, performed the removal and installation. Another, Ryder (secured by Bell Atlantic for C&P) hauled the equipment to the reclamation site.

Plaintiff says that Ryder was employed by Bell Atlantic. This is not supported by the facts. Bell Atlantic had a contract with companies like Ryder to routinely move equipment like this. In this case, when C&P made it known that there was equipment to be transported to the reclamation center, Bell Atlantic made the arrangements with Ryder for the work to be done, but at all times, it was to be billed to and done for C&P.

It is clear that when plaintiff was injured, he was engaged in the trade, business or occupation of C&P. His sole remedy for his injuries is under the Workers' Compensation Act.

Accordingly, the defendants' pleas are sustained, and this case is dismissed.